## In re Anonymous No. 4 D.B. 76

Disciplinary Board Docket no. 4 D.B. 76.

To The Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania

NEUMAN, *Member,* July 20, 1981—Pursuant to Pa.R.D.E. 218(c)(5), the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above petition for reinstatement.

## I. HISTORY OF THE PROCEEDINGS

On February 22, 1975, petitioner was convicted by a jury in the United States District Court for the Eastern District of Pennsylvania of interstate transportation of stolen securities in violation of the Act of June 25, 1948, 62 Stat. 806 and 684, as amended, 18 U.S.C.A. §§2314 and 2. On January 27, 1976 he was sentenced to three years imprisonment to begin February 9, 1976 and "to become eligible for parole under 18 U.S.C:A. §4208(a)(i) upon serving one year."

Petitioner was suspended from the practice of law by the Supreme Court of Pennsylvania on February 5, 1976. The court directed the Disciplinary Board to commence formal disciplinary proceedings against petitioner. On August 22, 1977 pursuant to a motion for reduction of sentence, the sentence was "amended" by the trial jurist so as to place petitioner on probation for a period of four years from November 29, 1976, with the proviso that he "shall not apply for reinstatement to practice law before the Bar of Pennsylvania or apply to the Bar of any other state for leave to practice law during the probationary period."

Petitioner entered Allenwood Federal prison in or about the end of November or early December of 1976. He was released in August of 1977.

Subsequent to the trial, petitioner moved the court for judgment of acquittal or for a new trial. Both motions were denied on December 12, 1975. Petitioner then appealed his conviction to the Court of Appeals for the Third Circuit, which affirmed the trial court on September 16, 1976. There is pending a petition to vacate, set aside or correct a sentence pursuant to the United States Code. The motion was filed by petitioner on February 9, 1979 and has not been disposed of. It would appear the court does not intend to consider this petition.

Following the dismissal of petitioner's appeal to the Third Circuit Court of Appeals, a petition for discipline was filed by the Office of Disciplinary Counsel on November 24, 1976. The hearing committee filed its report on March 15, 1977 recommending disbarment, and the Disciplinary Board agreed with the recommendation. On March 23, 1978, the Supreme Court of Pennsylvania disbarred petitioner, stating that he might apply for reinstatement five years after February 5, 1976.

On December 19, 1980, petitioner filed a petition for reinstatement with the Disciplinary Board. The matter was referred to a hearing committee, with a hearing held February 18, 1981. Although questions arose during the hearing concerning the filing date which was two months premature, Assistant Disciplinary Counsel stated that the erroneous filing date was technical in nature. Petitioner testified that he was under the impression a reinstatement could not take place until after February 5, 1981, but that this did not control the date of filing.

The hearing committee recommends reinstatement. No exceptions to the report of the hearing

committee were filed either by petitioner or by the Office of Disciplinary Counsel. The Disciplinary Board, however, does not concur with the recommendation of the hearing committee.

## II. DISCUSSION

The consideration of a petition for reinstatement is governed by the dictates of Pa.R.D.E. 218(c)(3)(i) which provides as follows:

"A disbarred or suspended attorney shall have the burden of demonstrating by clear and convincing evidence that such person has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth and that the resumption of the practice of law within the Commonwealth by such person will be neither detrimental to the integrity and standing of the Bar or the administration of justice nor subversive of the public interest."

Since his release from prison, petitioner has been working as a paralegal in a law office. Should he be reinstated, he has been offered a position to practice with the same law firm. Petitioner's testimony and that of other witnesses during the hearing indicated that petitioner has maintained technical competency and learning in the law.

The Disciplinary Board believes the real issue in this petition for reinstatement is whether or not petitioner has the moral qualifications required to practice law in Pennsylvania, and whether or not his resumption of practice would be detrimental to the integrity and standing of the Bar, the administration of justice or subversive to the public interest.

The transcript of the hearing conducted by the hearing committee consists primarily of witnesses

attesting to the good character of petitioner, his integrity, high standing in the community, and his ability to keep his family intact under adverse circumstances. His wife, also a witness at the hearing, returned to work as a registered nurse following petitioner's conviction and sentencing in order to support the family.

The report of the hearing committee, (as well as the transcript of the hearing), does not address a number of issues, such as the matter of a summary judgment outstanding against petitioner, and whether or not petitioner continues to lie with respect to the facts surrounding his possession of the stolen bonds.

Although petitioner has paid a penalty for the crime for which he was convicted, and although his disbarment and conviction have caused personal suffering to his family and himself, it is incumbent upon the Disciplinary Board to determine whether petitioner has been sufficiently rehabilitated so that his reinstatement would not be detrimental to he integrity of the Bar, the administration of justice or the public interest.

Petitioner maintains his innocence of the crime for which he was convicted to this day. As the trial judge wrote in his opinion of December 12, 1975: "Since he admittedly caused the securities to move interstate, and since he admitted they had been stolen, the only issue at trial was his guilty knowledge."

Petitioner continues to claim that the bonds were found in his mother-in-law's sewing cabinet after her death. No evidence has ever been produced to adequately explain how the securities managed to get from a bank to his mother-in-law's sewing cabinet. Nor has there been any evidence to show how a woman on a very limited income, with other

securities in a safety deposit box in a bank, could have acquired these bonds and then left them in her residence. Thus the Disciplinary Board finds petitioner's story impossible to believe.

In 1969, petitioner was interviewed by an agent of the FBI who was investigating the disappearance of the bonds from the bank, and stated he knew nothing concerning the bonds in question. In 1974, in an interview with another agent of the FBI, petitioner said the bonds had been removed from the bank by "another person," but refused to disclose this person's identity. He went on to tell the agent that he could not be prosecuted because the five year Federal Statute of Limitations had expired the previous year. He also stated that he could not be prosecuted for having made a false statement to the FBI, during its 1969 investigation, because he had not been under oath on that occasion as required by a recent Supreme Court decision. While he was displaying his knowledge of one aspect of criminal law, he failed to understand that the statute of limitations for interstate transportation of stolen securities had not run.

In the recommendation of the Disciplinary Board filed August 19, 1977 before your honorable court, the board points out that: "Although convicted of the interstate transportation of the stolen securities, the Respondent does not deny that he also received financial benefit from these securities. He was not merely a courier."

Attached to the petition for reinstatement is an order filed October 26, 1979 in the United States District Court granting summary judgment to the bank for $27,987.95 which, according to the order "represents the value of securities that were wrongfully converted by defendant (Petitioner). . . ."

Since the value of the stolen bonds was in excess of $50,000 this judgment represents partial compensation for their value. There is nothing in the petition for reinstatement to indicate any effort has been made by petitioner to begin payment to the bank. No questions were asked about this matter at the hearing.

The petition also notes that another bank has a judgment against petitioner and his wife for $23,000 which was entered in the prothonotary's office in January 1975. Petitioner mentions in the petition that in December 1979 he and his wife agreed "to a revival of said judgment. While I have never discussed the matter with the bank, it is my considered opinion that they have decided to forego pressing for payment until I am in a financial position to make some arrangements for payment." There is nothing in the petition or the report of the hearing committee to indicate the nature or the background of this particular judgment. No questions were asked about ths matter during the hearing.

Assistant Disciplinary Counsel asked petitioner during the hearing about two relatively small judgments against him, one by International Business Machines, entered in March 1977, and the other a tax lien entered November 15, 1977. Petitioner denied knowledge of the IBM debt, and claimed that the tax lien should have been filed against a corporation of which he had been an officer in 1976. Under questioning by a member of the hearing committee, Assistant Disciplinary Counsel stated that these judgments should not have a bearing on the decision of the hearing committee, but were raised in order to determine if their omission from the petition had been intentional or unintentional.

In the petition for reinstatement on page one, paragraph four, petitioner states that the trial judge "set aside Petitioner's conviction and imposed a four-year probationary term retroactive to November 29, 1976." Petitioner's conviction was never "set aside." As Assistant Disciplinary Counsel pointed out at the hearing, petitioner's sentence was modified, but his conviction was never set aside. After questioning of petitioner, as well as petitioner's attorney, attorney for petitioner agreed that petitioner's paragraph four was erroneous.

It is difficult to conclude that anything has occurred since petitioner's disbarment that would confirm his rehabilitation. Indeed, report of the Disciplinary Board filed before your honorable court on August 19, 1977 contains a passage which nearly parallels today's situation:

Petitioner has brought to the Board's attention his previously unblemished record and history of public service. In addition, he has presented the Board numerous letters from prominent and respected members of his community, including fellow members of the Bar, attesting to his legal ability and character. The fact remains, however, that petitioner has been convicted of a very serious crime. He has complained that his case was not adequately presented in some respects but he has never explained how the bonds supposedly came into his mother-in-law's possession. He has stated that he knows the history of the bonds but has refused to reveal more.

In the same report, the Disciplinary Board recommended that: "After five years, if he can establish that he has the moral qualifications and legal ability and that his resumption of practice will not be detrimental to the integrity and standing of the Bar or the administration of justice or subversive to

the public interest, petitioner can again commence to practice law."

The Disciplinary Board concludes that petitioner has not been able to meet the above test, especially to prove that he has the moral qualifications, and that his reinstatement would not be detrimental to the integrity of the Bar, the administration of justice or the public interest.

Petitioner continues to insist upon his innocence and persists in failing to tell the full truth about the circumstances of his case. In addition, there is no evidence to indicate he had made any attempt to make restitution for the proceeds of the stolen bonds, which he has admitted he used for his own financial benefit. It is not clear whether he intentionally chose to claim in his petition that his conviction had been "set aside." For these reasons it is difficult for the Disciplinary Board to determine whether or not the petition for reinstatement is entirely truthful. Testimony taken during the hearing did not shed much light on the case, but rather was used primarily for the benefit of petitioner, without due consideration of the interests of the public or the Bar.

## III. RECOMMENDATION

The Disciplinary Board does not concur with the recommendation of the hearing committee that petitioner be reinstated, and recommends that petition for reinstatement be denied.

Mrs. Hammerman and Mr. Krawitz did not participate in the adjudication.

### ORDER [OF PENNSYLVANIA SUPREME COURT]

O'BRIEN, *C.J.*, And now, September 25, 1981,

the recommendation of the Disciplinary Board dated July 20, 1981, is accepted and the petition for reinstatement is denied.

The expenses incurred by the board in the investigation and processing of the petition for reinstatement shall be paid by petitioner.